IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

SALAME M. AMR,

       Plaintiff,

v.                                     Civil Action No. 3:09cv667

EDDIE N. MOORE, JR., *et al.*,

       Defendants.


## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report

and Recommendation on the motions to dismiss filed by several groups of Defendants.[1]

(Docket Nos. 8, 22, 30.) The matter has been fully briefed. On June 11, 2010, the Court heard

oral argument.[2] The matter is now ripe for disposition. For the reasons stated below, the

undersigned Magistrate Judge RECOMMENDS that Defendants' motions to dismiss be

GRANTED. (Docket Nos. 8, 22, 30.)

---

[1] Defendants Eddie N. Moore, Jr., Larry C. Brown, Keith M. Williamson, Nasser Rashidi, Gerald Burton, Donna Crawford, Oliver Hill, Wondi Mersie, Andrew Kanu, Stephan Wildeus, Sharon Evans, and the Virginia State University Board of Visitors (collectively, "the VSU Defendants") filed the first motion to dismiss. (Docket No. 8.) Defendants Gloria Young and Ali Mohamed filed the second motion to dismiss. (Docket No. 22.) Finally, Defendant American Association of University Professors ("AAUP") moved to dismiss Plaintiff's Amended Complaint. (Docket No. 30.)
Defendant American Society of Engineering Education ("ASEE") has also moved to dismiss the Amended Complaint (Docket No. 43), and this motion has been referred to the undersigned (Docket No. 63). The Court will address ASEE's motion in a separate Report and Recommendation.

[2] Because the Court heard oral argument on June 11, 2010, the undersigned RECOMMENDS that Amr's Motion for Requesting a Hearing be DENIED AS MOOT. (Docket No. 68.)

## I.  Factual and Procedural Background

The instant Complaint presents issues raised in a previous lawsuit filed by Plaintiff Salame M. Amr in this Court in 2007. *See Amr v. Virginia State Univ.*, No. 3:07cv628, 2009 WL 112829 (E.D. Va. Jan. 14, 2009), *cert. denied* 2010 WL 978774 (hereinafter "*Amr I*").[3] The Court begins its analysis of the instant Complaint with a discussion of *Amr I*.

### A.    *Amr I*

On October 15, 2007, Amr, formerly employed by Virginia State University ("VSU") as an Assistant Professor in the School of Engineering, Science and Technology's Department of Engineering and Technology, filed a Complaint in this Court alleging that defendants VSU, Eddie N. Moore, Jr., Nasser Rashidi, Larry C. Brown, and Keith M. Williamson unlawfully accused him of plagiarism and denied him tenure. *See Amr I*. Amr's Second Amended Complaint asserted three causes of action against VSU, Rashidi, Brown, and Williamson:[4] Count One alleged a Title VII violation, Count Two alleged a violation of 42 U.S.C. § 1981, and Count Three alleged interference with his Fourteenth Amendment due process rights, in violation of 42 U.S.C. § 1983. *Amr I*, 2009 WL 112829, at *2.

The factual predicate for these claims centered around Amr's contention that the defendants had discriminated against him on the basis of race, national origin, and religion, and that because of this animus, the defendants had wrongly circulated a forged paper bearing Amr's name to make it appear as if Amr had plagiarized the paper. *See id.* at *3-6. As a result of the

---

[3] During oral argument, Amr informed the Court that he has petitioned the Supreme Court of the United States for a rehearing of its denial of his petition for *certiorari*.

[4] The *Amr I* Second Amended Complaint failed to name Moore as a defendant.

plagiarism allegation, the defendants denied Amr tenure and offered him a term appointment. *Id.*
at *5 ("The University Promotion and Tenure Committee ('UPTC') ultimately recommended that
Dr. Amr be denied tenure. The UPTC based this decision on a determination that, despite his
otherwise positive professional service to VSU, Dr. Amr's scholarly research activities were
unsatisfactory due to the substantiation of an allegation of academic misconduct by the
[Scientific and Integrity Committee].") (internal citation omitted).

Specifically, in Count One, Amr alleged a Title VII violation resulting from "three
specific areas of misconduct: (1) disparate pay; (2) unequal committee assignments and travel
opportunities; and (3) false claims of plagiarism." *Id.* at *6. Count Two alleged a violation of 42
U.S.C. § 1981. *Id.* at *8. In Count Three, Amr alleged that Brown and Williamson were "liable
to him under 42 U.S.C. § 1983 for depriving him of his Fourteenth Amendment right to due
process by infringing upon his liberty interest in his good name and reputation in the context of
his employment at VSU" because they requested that the Scientific and Integrity Committee
("SIC") investigate the alleged plagiarism. *Id.* at *8 (footnotes omitted).

The undersigned issued a Revised Report and Recommendation in *Amr I*, recommending
that the Honorable Robert E. Payne grant Defendants' motion for summary judgment and dismiss
the action because each of Amr's Title VII claims was barred by the statute of limitations, Amr's
§ 1981 claim could not proceed as a matter of law, and Amr had been afforded sufficient due
process to rebut the allegation of plagiarism (but had failed to do so). *Id.* at *6-12. Judge Payne
adopted the Revised Report and Recommendation for the reasons articulated in that report and

3

dismissed the action with prejudice.[5] *Id.* at *1. The United States Court of Appeals for the

Fourth Circuit affirmed. *Amr v. Virginia State Univ.*, 331 F. App'x 194 (4th Cir. 2009) (No. 09-

1184), *available at* 2009 WL 2400275.

## B.    The Instant Complaint: *Amr II*

On October 20, 2009, Amr filed a second Complaint in this Court ("*Amr II*"). In *Amr II*,

the Amended Complaint alleges eight causes of action against Defendants Moore, Brown,

Williamson, Rashidi, Burton, Crawford, Young, Mohamed, Hill, Mersie, Kanu, Wildeus, Evans,

ASEE, AAUP, and the VSU Board of Directors.[6] Count One appears to lie against Defendants

---

[5] After Judge Payne adopted the Revised Report and Recommendation, Amr noted his appeal to the United States Court of Appeals for the Fourth Circuit. He then moved the District Court for leave to file additional documents with the Court. Mot. to Update & Set the Record Straight, *Amr I*, No. 3:07cv628 (E.D. Va. filed Feb. 25, 2009). Amr sought to supplement the record before the Court on summary judgment to "present numerous undisputed facts before the [United States] Court of Appeals for the Fourth Circuit," including deposition transcripts and a "copy from the alleged plagiarized paper that the defendants had undeniably used to convict [Amr] of such a serious charge of plagiarism." Mem. Supp. Mot. to Update, *Amr I*, No. 3:07cv628, at 1-2 (E.D. Va. filed Feb. 25, 2009).
    The Court denied the motion, finding that the documents with which Amr sought to supplement the record were "available to him at all relevant times during the proceedings before this Court." Mem. Op., *Amr I*, No. 3:07cv628, at 9 (E.D. Va. filed May 4, 2009), *available at* 2009 WL 1208203, at *3. Amr appealed this decision to the Fourth Circuit as well. Having already denied Amr's petition for appeal, the Fourth Circuit denied this appeal as moot. *Amr v. Virginia State Univ.*, 352 F. App'x 845, 846 (4th Cir. 2009) (No.09-1657), *available at* 2009 WL 3809642, at *1.

[6] Each of the individually named Defendants worked at VSU at the time these allegations arose. Moore served as the President of VSU. (Am. Compl. ¶ 11.) Brown served as Interim Dean of the School of Engineering, Science and Technology. (Am. Compl. ¶ 12.) Williamson served as Chair of the Department of Engineering and Technology. (Am. Compl. ¶ 13.) Rashidi served as Chair of the Department of Engineering and Technology. (Am. Compl. ¶ 14.) Burton served as President of AAUP. (Am. Compl. ¶ 15.) Crawford served as faculty representative to the VSU's Board of Visitors. (Am. Compl. ¶ 16.) Young served as Chair of the University Promotion and Tenure Committee at VSU. (Am. Compl. ¶ 17.) Mohamed served as Chair of the Department of Biology and the first Chair of the SIC. (Am. Compl. ¶ 18.) Hill served as Chair of the Department of Psychology and the second Chair of the SIC. (Am. Compl. ¶ 19.) Mersie

Rashidi, Williamson, and Brown. (Am. Compl. ¶¶ 114-16.) Counts Two through Seven lie

against all Defendants. (Am. Compl. ¶¶118-45.) Count Eight lies against Defendants ASEE,

Rashidi, Williamson, and Brown. (Am. Compl. ¶¶ 146-53.) The Court restates the claims as

follows:

Count One      Defendants violated 42 U.S.C. §§ 1981[7] and 1983[8] by discriminating
               against Amr on the basis of race and national origin;

Count Two      Defendants violated 42 U.S.C. § 1981 because they "interfered with
               Plaintiff's promotional opportunities and reasonable expectation of
               continued employment contract with [VSU] by giving false and malicious
               information concerning him, which interference did cause him to get a
               term contract that ended in May 2008;"

---

served as a faculty member in the School of Agriculture and a member of the SIC. (Am. Compl.
¶ 20.) Kanu served as Chair of the Department of Health and Physical Education and a member
of the SIC. (Am. Compl. ¶ 21.) Wildeus served as a faculty member in the School of
Agriculture and a member of the SIC. (Am. Compl. ¶ 22.) Evans served as an Administrative
Specialist and a member of the SIC. (Am. Compl. ¶ 23.)
       Defendants Burton, Crawford, Young, Mohamed, Hill, Mersie, Kanu, Wildeus, and
Evans were identified and discussed, but not sued, in *Amr I*. 2d Am. Compl., *Amr I*,
No. 3:07cv628, ¶ 30 (filed July 29, 2008).

       [7] 42 U.S.C. § 1981(a) provides:

       All persons within the jurisdiction of the United States shall have the same right
       in every State and Territory to make and enforce contracts, to sue, be parties, give
       evidence, and to the full and equal benefit of all laws and proceedings for the
       security of persons and property as is enjoyed by white citizens, and shall be
       subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
       kind, and to no other.

42 U.S.C. § 1981(a).

       [8] "Every person who . . . subjects, or causes to be subjected, any citizen . . . to the
deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured in an action at law, suit in equity, or other proper proceeding for
redress . . . ." 42 U.S.C. § 1983.

| Count Three | Defendants violated 42 U.S.C. § 1983 and Virginia Code §§ 18.2-499[9] and 18.2-500[10] by repeatedly discriminating against him on the basis of race and national origin, by conspiring "for the purpose of impeding, hindering, and defeating the due course of justice with intent to deny the plaintiff the protected constitutional and civil rights," and by failing to prevent the commission of such violations; |
| --- | --- |
| Count Four | Defendants tortiously interfered with Amr's contract and business expectations because "[a]bsent defendant's [sic] intentional misconduct, the plaintiff would have obviously been promoted to tenure and continued employed;" |
| Count Five | Defendants violated 42 U.S.C. §§ 1985[11] and 1986[12] by: (1) conspiring "to interfere with Plaintiff's reasonable expectation of continued employment |

---

[9] "Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor." Va. Code § 18.2-499(A).

[10] "Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit . . . ." Va. Code § 18.2-500(A). A court also has jurisdiction "to issue injunctions pendente lite and permanent injunctions and to decree damages and costs of suit, including reasonable counsel fees" whenever a person files a civil action alleging violations of Va. Code § 18.2-499 and seeking an injunction. Va. Code § 18.2-500(B).

[11] 42 U.S.C. § 1985(3) states, in relevant part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[12] 42 U.S.C. § 1986 states:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

42 U.S.C. § 1986.

with [VSU];" (2) failing "to protect the plaintiff of conspiracies pursuant to the enforcement clause of the Fourteenth Amendment;" and, (3) conspiring "to obstruct justice and to negatively influence the outcome of an investigation of the plaintiff's alleged misconduct which greatly injured his integrity and professional reputation that led to significant damages [sic] his academic career;"

Count Six    Defendants intentionally inflicted emotional distress upon Amr because they "caused the plaintiff not to get promoted to tenure and to enter into a prospective tenured contract with VSU by giving false information and fraudulent advice;"[13]

Count Seven  "Defendants supplied false information for the guidance of others in their transactions, are subject to liability for pecuniary loss caused to the plaintiff by their unjustifiable reliance upon false information," and gave "false and baseless recommendations that resulted in the dismissal of the plaintiff from VSU;" and,

Count Eight  Defendants ASEE, Rashidi, Williamson, and Brown violated Amr's right to privacy[14] because they "disclosed privileged private information of no public interest without consent from the plaintiff," eavesdropped on Amr's conversations, opened Amr's mail, searched Amr's personal belongings without permission, entered Amr's office without permission, and "forged a false manuscript to introduce prejudice to the plaintiff."

(Am. Compl. ¶¶ 114-53.) (Docket No. 5.) Amr seeks back pay and lost benefits, declaratory and

injunctive relief, reinstatement of his employment and an offer of tenure, a "[c]ertified apology"

from Defendants AAUP and ASEE, offers of lifetime membership to AAUP and ASEE, front

pay and benefits, compensatory damages, punitive damages,[15] pre-judgment interest,

---

[13] This claim also includes an allegation that Defendants have placed Amr "in a false light before the public." (Am. Compl. ¶¶ 141-42.)

[14] Amr alleges violations of the Restatement (Second) of Torts § 652 and various Virginia statutes. (*See* Am. Compl., Eighth Cause of Action.)

[15] During oral argument on June 11, 2010, in response to AAUP's contention that Amr has sued them for an apology, Amr moved the Court for leave to amend his Amended Complaint to clarify that he seeks an award of damages from each Defendant. Because the undersigned recommends that the Court grant Defendants' Motions to Dismiss (Docket Nos. 8, 22, 30), the undersigned RECOMMENDS that the Court DENY Amr's oral motion to amend his Amended Complaint.

expungement of any adverse personnel record, and the costs associated with bringing this suit. (Am. Compl. at 24-25.)

The VSU Defendants, Young and Mohamed, and AAUP each contend, *inter alia*, that the doctrines of res judicata and collateral estoppel bar the instant action because Amr again seeks relief from VSU's decision to deny him tenure based upon allegations that Amr plagiarized an academic paper.[16] (Defs. Mem. Supp. Mot. Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(B)(6) ("VSU Mem."), at 6-14; Defs. Mem. Supp. Mot. Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(B)(6) ("Young/Mohamed Mem."), at 6-14; Am. Ass'n of Univ. Professors' Br. Supp. Mot. Dismiss ("AAUP Br."), at 4-13 (adopting the VSU Defendants' arguments that res judicata and collateral estoppel bar this action).) (Docket Nos. 9, 23, 31.) Defendants contend *Amr II* presents issues the Court expressly considered and resolved in *Amr I*.

## II. Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

---

[16] The VSU Defendants and Young and Mohamed also assert that the doctrine of the law of the case applies to bar any claims set forth in the Amended Complaint. (VSU Mem. 13 (arguing that orders entered by this Court and the United States Court of Appeals for the Fourth Circuit in a previous action bind Amr for purposes of this action); Young/Mohamed Mem. 13 (same).) In addition, the VSU Defendants and Young and Mohamed contend that the statute of limitations bars Amr's defamation claim (*see* Am. Compl. ¶ 29 (alleging Defendants Rashidi, Brown, and Williamson "publicly disparaged" Amr)); and that Amr's allegations of fraud, conspiracy, and intentional infliction of emotional distress are barred by res judicata. (VSU Mem. 13; Young/Mohamed Mem. 13.) Finally, the VSU Defendants contend that the doctrine of sovereign immunity protects the VSU Board of Visitors and VSU from suit. (VSU Mem. 10.)

AAUP contends that the statute of limitations bars Counts One, Three, Four, Five, Six, and Seven. (AAUP Mem. 5-7.) Further, AAUP contends that the instant Complaint lacks merit because Amr has not alleged any facts sufficient to establish a cause of action against AAUP as to Counts One through Seven. (AAUP Mem. 7-13.)

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her

9

claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

"Motions to dismiss under the doctrines of *res judicata* and collateral estoppel are properly reviewed under the standard for Rule 12(b)(6)." *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 684 (E.D. Va. 2008). However, the affirmative defenses of res judicata and collateral estoppel may be raised only if they "clearly appear on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Here, the Court finds that the defenses of res judicata and collateral estoppel clearly flow from the allegations in Amr's Amended Complaint. (*Compare* Second Am. Compl., *Amr I*, No. 3:07cv628 (E.D. Va. filed July 29, 2008), *with* Am. Compl. ¶¶ 27-113.)

"[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Because the res judicata defense raises no disputed issue of fact, the Court will take judicial notice of the prior proceedings in *Amr I*. Thus, no further factual explanation of Amr's claims is necessary here.

### III. Analysis

A. **Parties' Contentions**

1. **Defendants Assert Res Judicata Bars Each of Amr's Claims**

Defendants contend that, although Amr identifies new legal claims in *Amr II*, the new claims arise from the very same facts upon which each claim in *Amr I* was based. Defendants argue that Amr had a full and fair opportunity to litigate these claims in *Amr I*. (*E.g.*, AAUP Br.

10

5 ("Amr had the opportunity to litigate his claims of discrimination and violation of his civil rights based upon the allegations of plagiarism in the previous suit. He cannot now revive those claims . . . [in a different context] after they failed in the first suit."). Therefore, Defendants assert each of the claims lodged in *Amr II* must be dismissed pursuant to the doctrine of res judicata.

### 2. Amr Contends He Did Not Have a Full and Fair Opportunity to Litigate His Claims in *Amr I*

Amr argues that he did not have a full and fair opportunity to litigate his claims in *Amr I*. Amr asserts that res judicata cannot bar the instant action because: (1) he "did not have a chance to call all defendants (defendant Moore) in the last lawsuit or those in privity with them then for deposition;" (2) "collateral estoppel does not apply here because of the lack of a strict identity of the defendants in the two suits;" (3) "Plaintiff did not actually litigate this crucial issue [of whether there had been a conspiracy to accuse Amr of plagiarism and deny him tenure] long enough in the prior proceeding;" (4) "the court did not reach the crucial presented questions;" and, (5) this Court's decision in *Amr I* "was procured by intrinsic fraud (evident forged evidence used)." (Pl.'s Br. Reply to Defs.' Br. Resp. 6-8, 11.) (Docket No. 32.) Furthermore, Amr contends he was unable to litigate certain issues in *Amr I* because Defendants fraudulently

11

concealed certain documents.[17] (*See* Pl.'s Mem. Resp. to VSU Defs.' Mot. Dismiss 8.)
(Docket No. 11.)

In addition, at oral argument on June 11, 2010, Amr apprised the Court of other reasons he contends that he did not receive a full and fair hearing in *Amr I*. Specifically, Amr contends that at the time he was litigating *Amr I*, he was suffering health issues, his wife had surgery, and he experienced a death in the family. In addition, Amr clarified that he believes the attorneys who represented him in *Amr I* did not adequately represent his interests in that case. Therefore, Amr moves this Court to view the Amended Complaint in the instant action as an amended complaint in *Amr I*, or essentially as a continuation of his original action.[18]

## B. The Doctrine of Res Judicata Bars Amr's Claims

Defendants contend generally that res judicata bars Amr's claims. Because the doctrine of claim preclusion applies to some Defendants, however, and the doctrine of issue preclusion to others, the Court discusses the governing principles of each.

---

[17] "The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until' the defendant 'could plead the statute of limitations to protect it.'" *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (*quoting Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874)) (alteration in original). Because the Court does not rest on a finding that the statute of limitations bars Amr's claims as to Defendants Moore, Brown, Williamson, Rashidi, Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, the VSU Board of Visitors, Young, Mohamed, or AAUP, the Court need not further discuss any allegations of fraudulent concealment.

[18] It appears to the Court that Amr's expressed dissatisfaction with the manner in which *Amr I* was litigated constitutes the true genesis of the claims underpinning *Amr II*. Such claims of dissatisfaction with his previous counsel, however, are not properly before the Court and will not be considered in the resolution of the instant motions. Furthermore, although the Court exercises broad discretion in permitting amendments to pleadings, *see* Fed. R. Civ. P. 15, the Court declines to consider the Amended Complaint in *Amr II* as a mere continuation of *Amr I*.

12

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008). The doctrine of res judicata serves an important function. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979); *cf. Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001) ("Hindsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order. It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it." (discussing motions for reconsideration)).

### 1. Claim Preclusion

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor*, 128 S. Ct. at 2171 (*quoting New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Not only does the doctrine of claim preclusion bar "claims that were raised," but it also bars those claims which "could have been raised in the prior litigation." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). Indeed, "[t]he doctrine bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding." *Ali v. Jeng*, 86 F.3d 1148 (4th Cir. 1996), *available at* 1996 WL 293181, at *3.

13

To be barred by the doctrine of claim preclusion, claims must meet three elements:
"1) the prior judgment was final and on the merits, and rendered by a court of competent
jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in
privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause'
of action involved in the earlier proceeding."[19] *Pittston Co.*, 199 F.3d at 704; *Nash County Bd. of
Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981).

### a.      Same Parties or Parties in Privity

"[T]he doctrine of res judicata binds only parties or their privies by a prior judgment."
*Nash County Bd. of Educ.*, 640 F.2d at 493.  To be in privity requires a "'person [to be] so
identified in interest with a party to former litigation that he represents precisely the same legal
right in respect to the subject matter involved.'" *Id.* at 493 (*quoting Jefferson Sch. of Soc. Sci. v.
Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963)).  Courts impose this
requirement because "[a] person who was not a party to a suit generally has not had a 'full and

---

[19] In this case, no dispute exists regarding the finality of this Court's judgment in *Amr I.
See Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1181 (4th Cir. 1989) (noting that Fourth Circuit
jurisprudence finds summary judgment dismissal to be a final adjudication on the merits).
Therefore, the Court will not address this element in its subsequent analysis.

fair opportunity to litigate' the claims and issues settled in that suit."[20] *Taylor*, 128 S. Ct. at 2171

(*citing Richards v. Jefferson County*, 517 U.S. 793, 797-98 (1996)).

### b. Claims in Second Matter Based Upon Same Cause of Action

"[T]he appropriate inquiry to determine whether causes of action are identical for claim

preclusion purposes is whether the claim presented in the new litigation 'arises out of the same

transaction or series of transactions as the claim resolved by the prior judgment.'" *Pittston Co.*,

199 F.3d at 704 (*quoting Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). "Claims may

arise out of the same transaction or series of transactions even if they involve different harms or

different theories or measures of relief." *Harnett*, 800 F.2d at 1314. "Among the factors to be

considered in deciding whether the facts of the current and prior claims 'are so woven together'

that they constitute a single claim 'are their relatedness in time, space, origin, or motivation, and

whether, taken together, they form a convenient unit for trial purposes.'" *Pittston Co.*, 199 F.3d

at 704 (*quoting Restatement (Second) of Judgments* § 24 cmt. b (1982)).

---

[20] In *Taylor*, the Supreme Court of the United States identified six instances in which nonparty preclusion may be justified. First, a person may expressly agree to be bound by the determination of issues in another suit. *Id.* at 2172. Second, there may exist a variety of legal relationships between the person to be bound and the party to the suit. *Id.* Third, "'in certain limited circumstances,' a nonparty may be bound by a judgment because [he or] she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Id.* (*quoting Richards*, 517 U.S. at 798) (second alteration in original); *see Jones v. SEC*, 115 F.3d 1173, 1180-81 (4th Cir. 1997) (stating that privity attaches only to parties whose interests are aligned). Fourth, a nonparty who assumes control of the litigation may be bound by the judgment rendered. *Taylor*, 128 S. Ct. at 2173. "Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Id.* Sixth, in some circumstances, a statutory scheme, consistent with due process, may foreclose successive litigation by a nonparty. *Id.*

## 2.    Issue Preclusion

Issue preclusion, also called collateral estoppel, "in contrast [to claim preclusion], bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 128 S. Ct. at 2171 (*quoting New Hampshire*, 532 U.S. at 748-49). Issue preclusion acts to bar claims when: "(1) the issues litigated in the first action are, in substance, the same as the issues in the second action; (2) the issues were actually determined; (3) the issues were necessary to a final judgment; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues." *Ali*, 1996 WL 293181, at *2 (*citing Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311-12 (4th Cir. 1987)). Issue preclusion does not require mutuality of parties. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

When a plaintiff seeks to estop a defendant from relitigating issues the defendant has previously litigated and lost, the plaintiff applies offensive collateral estoppel. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979), *limited by United States v. Mendoza*, 464 U.S. 154, 162 (1984) (holding that nonmutual offensive collateral estoppel does not apply against the government). If a defendant seeks to estop a plaintiff from relitigating issues the plaintiff has already litigated and lost against another defendant, as in this case, the defendant asserts defensive collateral estoppel. *Id.* "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries. Thus, defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." *Id.* at 329-30 (internal quotation omitted). Defensive collateral estoppel precludes a plaintiff

from "bring[ing] piecemeal litigation by naming different defendants and alleging new causes of action, when all of his claims arise from the same operative facts." *Ali*, 1996 WL 293181, at *3.

## C.    *Amr II* Claims

In this case, the Court finds that the instant Complaint falls squarely within the class of actions to which the doctrine of res judicata applies. Indeed, *Amr II* presents the very situation against which the Fourth Circuit cautioned in *Ali*: Amr has named new defendants and alleged new causes of action, but his claims arise from the very same operative facts presented in *Amr I*. *See id.* Comparison of the *Amr II* claims to those raised and adjudicated in *Amr I* enables the Court to make such a determination.

The Court finds, however, that although Defendants allege that "[e]ach of the elements necessary for claim preclusion is present in this lawsuit" (Young/Mohamed Mem. 7), for the reasons that follow, claim preclusion bars Amr's claims as to some of the Defendants, while issue preclusion bars Amr's claims as to other Defendants.

## 1.    Count One:  Violation of 42 U.S.C. §§ 1981, 1983

In Count One of *Amr II*, Amr contends Defendants Rashidi, Williamson, and Brown "jointly and severally engaged in unlawful race and national origin discrimination against [him]" by subjecting him to unequal pay and low performance evaluations. (Am. Compl. ¶ 116.) Because no dispute exists as to the finality of this Court's decision in *Amr I*, *see* n. 19, *supra*, in order for the doctrine of claim preclusion to bar this action, Defendants need only demonstrate: (1) that the party or parties sued in *Amr I* are identical to or in privity with those sued in *Amr II*; and, (2) that the claim at issue in *Amr II* arises from the same cause of action as that involved in

17

*Amr I. See Pittston Co.*, 199 F.3d at 794. Defendants have established both elements with respect to Count One.

First, as the VSU Defendants and Young and Mohamed correctly contend, Defendants Brown, Williamson, and Rashidi were each identified as a party-defendant in *Amr I*, and each has now been named a Defendant in *Amr II*. (VSU Mem. 7; Young/Mohamed Mem. 7.) This meets the first element of the doctrine of claim preclusion.

Second, Count One in *Amr II* arises from the same cause of action identified in *Amr I*. Specifically, in Count One of *Amr II*, Amr alleges race and national origin discrimination "including but not limited to, subjecting [Amr] to unequal pay [and] low performance evaluations." (*See* Am. Compl. ¶¶ 114-17.) In *Amr I*, Amr lodged nearly identical allegations: Count One of the Second Amended Complaint in *Amr I* alleged race and national origin discrimination resulting in disparate pay, unequal committee assignments and travel opportunities, and false claims of plagiarism. *Amr I*, 2009 WL 112829, at *6-7. Amr does not change the substance of the claim by now alleging that he suffered low performance evaluations, in addition to disparate pay, as a result of Defendants' alleged discrimination. *See Harnett*, 800 F.2d at 1314 (noting that claims may arise out of the same transaction even if they involve different theories of relief).

Accordingly, the doctrine of claim preclusion bars Count One in *Amr II*. The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count One.

## 2.    Count Two:  Violation of 42 U.S.C. § 1981

In Count Two of *Amr II*, Amr contends all named Defendants "jointly and severally interfered with Plaintiff's promotional opportunities and reasonable expectation of continued

employment contract with [VSU] by giving false and malicious information concerning him, which interference did cause him to get a term contract that ended in May 2008." (Am. Compl. ¶ 119.) Defendants correctly contend res judicata bars this claim.

Count Two arises from the same cause of action identified in *Amr I*. Count Two alleges Defendants gave "false and malicious information" about Amr to the SIC, which resulted in VSU's decision to deny Amr tenure. (Am. Compl. ¶ 119.) The false and malicious information to which Amr refers is the allegation that he plagiarized a paper submitted to Defendant ASEE. (*See, e.g.*, Am. Compl. ¶ 43 ("Moadab and the Defendant Rashidi made the defamatory and false accusation to the VSU Provost W. Eric Thomas . . . that the plaintiff has plagiarized a paper which was presented to the Defendant ASEE in early January 2005.").) Thus, clearly, at the heart of this claim are Amr's contentions that he did not plagiarize the paper submitted to ASEE, that Defendants' insistence otherwise was incorrect, and that Defendants wrongfully relied on this plagiarism allegation to justify denying him tenure. This Court fully considered these claims in *Amr I*. *See generally Amr I*, 2009 WL 112829. Accordingly, because Defendants Rashidi, Williamson, and Brown were named as defendants in *Amr I*, the doctrine of claim preclusion bars Count Two as to these Defendants.

The doctrine of claim preclusion does not apply to the remaining Defendants, however. Instead, the doctrine of issue preclusion applies to bar Count Two as to Defendants Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, the VSU Board of Visitors, and AAUP.[21]

---

[21] Defendants argue the remaining VSU Defendants stand in privity to the parties in *Amr I*, and thus the doctrine of claim preclusion bars Amr's claims, "because the new Defendants in Amr II would have the same defenses from the same common nucleus of operative facts as the Defendants in Amr I." (VSU Mem. 8; Young/Mohamed Mem. 8.) Essentially, Defendants argue

First, as outlined above, the issues raised in Count Two are substantially the same issues raised in *Amr I. See Pittston Co.*, 199 F.3d at 704; *Keith*, 900 F.2d at 740; *Harnett*, 800 F.2d at 1314; *see also* 2d Am. Compl., *Amr I*, No. 3:07cv628, ¶¶ 31-49 (alleging that Amr did not authorize the allegedly plagiarized paper and that the Defendants relied upon this plagiarism allegation to deny Amr tenure).

Second, the Court's decision in *Amr I* determined the issues Amr now raises. Specifically, with respect to the plagiarism charge, the Court determined in *Amr I* that the defendants had provided adequate opportunities, both formal and informal, for Amr to clear his name both before and after the tenure decision was made. *Amr I*, 2009 WL 112829, at *11-12.

---

the defendants' representation in *Amr I* was "adequate" for purposes of nonparty preclusion. The Court cannot make such a finding.

> A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representatives are aligned; and (2) either the party understood [himself or] herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented.

*Taylor*, 128 S. Ct. at 2176 (internal citations omitted). Here, Defendants allege only that the parties' interests align. (*See* VSU Mem. 8 (stating that the Revised Report and Recommendation in *Amr I* discussed these parties' conduct, and thus the parties' interests align with the interests of the defendants in *Amr I*).)

Although alignment of interests constitutes a necessary factor to establish a party's adequate representation of a nonparty's interests in prior litigation, *see Jones*, 115 F.3d at 1180-81 (finding the parties' interests sufficiently different to preclude privity), alignment alone insufficiently establishes adequate representation of a nonparty's interests. *See Taylor*, 128 S. Ct. at 2176. Defendants have not addressed whether the parties understood themselves to be acting in a representative capacity, or whether the Court took care to protect the interests of the nonparties. Without such information on the record, the Court cannot make the finding that Defendants Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, AAUP, and VSU Board of Directors were in privity with the defendants in *Amr I* for purposes of claim preclusion. Accordingly, the Court applies the doctrine of issue preclusion.

Further, the Court determined that Amr never disputed the commonalities between his paper and the paper he allegedly plagiarized, did not claim to have submitted independently gathered data that would demonstrate that his paper differed from the one he allegedly plagiarized, and did not offer a copy of the paper itself to dispute the plagiarism charge. *Id.* at *9-10. Thus, contrary to Amr's assertion that the Court failed to reach what he deems the critical issue (*see* Pl.'s Br. Reply to Defs.' Br. Resp. 6-8), the record in *Amr I* clearly establishes that the Court considered the plagiarism charge and found that Amr had offered no evidence tending to show the falsity of the charge.

Third, the Court's determination of the issues Amr now raises was necessary to its final judgment in *Amr I. See Amr I*, 2009 WL 112829, at *8-12. Fourth, and finally, Amr had a full and fair opportunity to litigate these issues in *Amr I*: Amr twice amended his Complaint in *Amr I*. Moreover, as *Amr I* was resolved at the summary judgment stage, Amr had the opportunity to conduct discovery and present evidence, thus providing ample opportunity to litigate the issue of whether the plagiarism charge was founded. *See Harnett*, 800 F.2d at 1313. Therefore, the doctrine of issue preclusion bars Amr from advancing Count Two against Defendants Moore, Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, AAUP, and the VSU Board of Directors[22] in the instant action.

---

[22] The VSU Defendants contend the doctrine of sovereign immunity protects from suit the VSU Board of Directors. (VSU Mem. 10.) VSU, as a state agency, demonstrates entitlement to absolute immunity from suit. *See Wilson v. Univ. of Va.*, 663 F. Supp. 1089, 1092 (W.D. Va. 1987). Similarly, the VSU Board of Directors demonstrates entitlement to immunity from suit because, like the university itself, it is a state agency. *See Collin v. Rector & Bd. of Visitors of Univ. of Va.*, 873 F. Supp. 1008, 1013 (W.D. Va. 1995). Although the Court does not rest on this finding, it appears that the Court may dismiss the claims against the VSU Board of Directors on this ground, as well.

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Two.

### 3.      Count Three: Violation of 42 U.S.C. § 1983 and Va. Code §§ 18.2-499 and -500

In Count Three, Amr contends Defendants "repeatedly and intentionally discriminated against him" on the basis of race and national origin, that "Defendants conspired for the purpose of impeding, hindering, and defeating the due course of justice," and that Defendants "had the power to aid in preventing" the wrongs Amr alleges. (Am. Compl. ¶¶ 123-25.) As with Counts One and Two, res judicata bars Count Three.

The Court notes that the allegation of plagiarism and subsequent denial of tenure constitute the wrongs Amr alleges in Count Three of *Amr II*. (*See* Am. Compl. 27-113 (recounting the plagiarism investigation and tenure application).) For the reasons discussed in Count One, the doctrine of claim preclusion bars Count Three with respect to Defendants Rashidi, Williamson, and Brown as it relates to any claim of race or national origin discrimination.[23]

The doctrine of issue preclusion bars a claim of race or national origin discrimination as to the remaining Defendants. First, as the Court noted with respect to Count One, the issue Amr now raises in Count Three flows from the same cause of action identified in *Amr I*. Second, the Court determined this issue in *Amr I*. *See Amr I*, 2009 WL 112829, at *6-7 (recommending dismissal of Amr's Title VII claims because the statute of limitations barred them).) Third, the Court's determination of this issue was necessary to its final judgment in *Amr I*. Finally, Amr

---

[23] To the extent Claim Three alleges a conspiracy (*see* Am. Compl. ¶ 124), this appears duplicative of Count Five (*see* Am. Compl. ¶¶ 133-37), and will not be discussed separately here.

had a full and fair opportunity to litigate this issue in *Amr I*. Accordingly, the doctrine of issue preclusion bars Count Three as to Defendants Moore, Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, AAUP, and the VSU Board of Directors.

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Three.

### 4. Count Four: Tortious Interference

Amr alleges Defendants tortiously interfered with his contract and business expectations because "[a]bsent defendant's [sic] intentional misconduct, the plaintiff would have obviously been promoted to tenure and continued employed." (Am. Compl. ¶ 131.) Res judicata bars this claim.

Count Four asserts an issue raised in *Amr I* and decided by the Court. In *Amr I*, this Court considered Amr's due process claim as it related to his liberty interest in his good name and reputation in the context of his employment at VSU. *Amr I*, 2009 WL 112829, at *8-12. In addition, the Court noted that, although he claimed not to allege a property interest in continued employment as a professor, Amr nevertheless sought reinstatement at VSU as a remedy to the loss of reputation he suffered. *Id.* at *8 n.15. The Court found that, "Even if Dr. Amr were unambiguously asserting a property interest in his employment at VSU, an untenured professor such as Dr. Amr has no constitutionally protected property interest in continued employment." *Id.* (*citing Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)). Accordingly, the issue Amr raises in Count Four of *Amr II* was litigated and resolved in *Amr I*. Thus, as to Defendants Rashidi, Williamson, and Brown, all named defendants in *Amr I*, the doctrine of claim preclusion bars Count Four.

23

Even though it recurs in the context of a different claim in *Amr II*, the doctrine of issue preclusion bars Amr's pursuit of this claim with respect to the remaining Defendants. *See Taylor*, 128 S. Ct. 2171; *Ali*, 1996 WL 293181, at *2. Amr raised this issue in *Amr I*, the Court ruled on the issue, that determination was necessary to the Court's final judgment, and Amr had a full and fair opportunity to litigate this claim. Accordingly, issue preclusion bars Count Four with respect to Defendants Moore, Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, AAUP, and the VSU Board of Directors.

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Four.

### 5. <u>Count Five: Violations of 42 U.S.C. §§ 1985 and 1986</u>

Count Five contends Defendants conspired to deprive Amr of continued employment at VSU and to negatively influence the outcome of the SIC investigation of his alleged plagiarism, and that Defendants failed to protect him from the conspiracy. (Am. Compl. ¶¶ 133-37.) Res judicata bars this claim.

As noted above, the heart of this claim lies in Amr's contention that he did not plagiarize the paper submitted to ASEE, and that Defendants' subsequent investigation of that allegation and determination that the charge was founded was incorrect. Thus, Count Five raises the same issues asserted in *Amr I*. *See Pittston Co.*, 199 F.3d at 704; *Keith*, 900 F.2d at 740; *Harnett*, 800 F.2d at 1314. Accordingly, claim preclusion bars Amr from lodging this claim against Defendants Rashidi, Williamson, and Brown, all named defendants in *Amr I*.

Moreover, issue preclusion bars this claim as to the remaining Defendants. This Court determined the issue in *Amr I*, finding that Amr had offered no evidence of the falsity of the

24

plagiarism charge. *See Amr I*, 2001 WL 112829, at *9-12. This determination was necessary to the Court's final judgment, and Amr had ample opportunity to litigate this claim. Accordingly, the doctrine of issue preclusion bars Count Five as to Defendants Moore, Burton, Crawford, Hill, Mersie, Kanu, Wildeus, Evans, AAUP, and the VSU Board of Directors.

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Five.

### 6. Count Six: Intentional Infliction of Emotional Distress

In Count Six, Amr contends "Defendants' extreme and outrageous conduct intentionally and recklessly caused severe emotional distress" to him. (Am. Compl. ¶ 139.) Specifically, Amr asserts "Defendants intentionally caused the plaintiff not to get promoted to tenure and to enter into a prospective tenured contract with VSU by giving false information and fraudulent advice." (Am. Compl. ¶ 140.)

Count Six merely attempts to label the same underlying conduct with a new theory of relief, and thus does not survive a motion to dismiss based on the doctrine of res judicata. *See Harnett*, 800 F.2d at 1314. Therefore, claim preclusion bars Amr's pursuit of Count Six as to Defendants Rashidi, Williamson, and Brown, and issue preclusion bars Amr's pursuit of Count Six as to the remaining Defendants.

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Six.

### 7. Count Seven: Information Negligently Supplied for the Guidance of Others

Count Seven again asserts that Defendants intentionally caused Amr not to receive tenure because they gave "false and baseless recommendations" about the plagiarism charge. (Am. Compl. ¶ 145.) Amr contends Defendants are liable for each other's "unjustifiable reliance" on the plagiarism allegations to support a decision to deny him tenure. (Am. Compl. ¶ 144.)

Count Seven attempts to articulate a new legal theory to support a claim arising from the same underlying conduct Amr contests: the allegation of plagiarism and the subsequent denial of tenure. As the Court noted with respect to Count Six, a claim arising out the same transaction, but alleging a different theory of relief, does not survive a motion to dismiss on the ground of res judicata. *See Harnett*, 800 F.2d at 1314. Accordingly, and for the same reasons as articulated with respect to Counts Two and Six, Count Seven fails.

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Seven.

### 8. Count Eight: Violation of Right to Privacy

Count Eight asserts a claim for violation of privacy. Amr contends "Defendants ASEE, Rashidi, Williamson, and Brown disclosed privileged private information of no public interest without consent from the plaintiff," and that Defendants Rashidi, Williamson, and Brown eavesdropped on Amr's conversations, opened his mail, searched his personal belongings, entered his private office without his permission, and accessed his computer without his permission. (Am. Compl. ¶¶ 147-51.) Amr appears to allege Defendants took these actions in order to create a forged document bearing Amr's name, which Amr contends Defendants then

26

circulated to make it appear as if Amr authored the paper. (Am. Compl. ¶¶ 150-51.) Essentially, Amr continues to assert that he did not author the allegedly plagiarized paper, and he now presents an alternate theory: that Defendants Rashidi, Williamson, and Brown actually authored the paper, and then forged Amr's name.

Despite his attempt to create a new theory as to the origin of the plagiarized paper, Amr again presents an issue previously raised and decided in *Amr I*. In *Amr I*, this Court noted that Amr accused Dr. Moadab of "circulat[ing] a paper throughout VSU that he had forged to make it look as if Dr. Amr had plagiarized it." *Amr I*, 2009 WL 112829, at *5. However, the Court found sufficient evidence to establish that Amr had failed to rebut the accusation and that the plagiarism charge was founded. *See id.* at *9-10. Specifically, the Court found that "Amr has now had nearly four years to explain the commonalities [between his paper and the original paper], and he has never done so, despite ample opportunities before the SIC and this Court. Without more, he merely asserts that the allegation was false." *Id.* at *10 (internal quotation omitted). The Court found this insufficient to survive the pending motion for summary judgment. *Id.* "Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief." *Harnett*, 800 F.2d at 1314 (citation omitted). Thus, Amr's attempt to revise his original claim to allege not only Moadab's involvement in the creation of the forged paper, but also Rashidi, Williamson, and Brown's involvement, does no more than allege a different theory of the same transaction. Therefore, Amr raises the same issue raised and decided in *Amr I*. Accordingly, claim preclusion bars this claim as to Defendants Rashidi, Williamson, and Brown, all of whom were defendants in *Amr I*.

27

The undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss Count Eight.

**D.    Summary**

For the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants' motions to dismiss be GRANTED (Docket Nos. 8, 22, 30) and the action DISMISSED as to Defendants Moore, Brown, Williamson, Rashidi, Burton, Crawford, Young, Mohamed, Hill, Mersie, Kanu, Wildeus, Evans, AAUP, and the VSU Board of Directors.[24] Because this Report and Recommendation does not address Defendant ASEE, any claims against ASEE remain pending.[25]

---

[24] On February 12, 2010, Amr filed a Motion for Leave to Amend His Memorandum Response and Its Memorandum of Law ("Motion for Leave to Amend"). (Docket No. 33.) At oral argument, Amr explained that with this motion, he seeks to correct a clerical error. Specifically, Amr's January 27, 2010 response to Defendants Young and Mohamed's Motion to Dismiss (Docket No. 22) has been docketed incorrectly as a response to the VSU Defendants' Motion to Dismiss (Docket No. 8). Amr moves the Court to consider the arguments made in his December 28, 2009 response to the VSU Defendants' Motion to Dismiss and his January 27, 2010 response to Young and Mohamed's Motion to Dismiss applicable to both motions to dismiss. (*See* Mot. for Leave to Amend 2.) Because the undersigned recommends that the Court grant both the VSU Defendants' and Young and Mohamed's motions to dismiss, the undersigned RECOMMENDS that Amr's Motion for Leave to Amend be DENIED AS MOOT. (Docket No. 33.)

Additionally, on March 25, 2010, AAUP filed a Motion to Strike Amr's Reply Brief in Response to Defendant's Rebuttal Brief in support of AAUP's Motion to Dismiss. (Docket No. 55.) Because the undersigned recommends that the Court grant AAUP's Motion to Dismiss, the undersigned RECOMMENDS that the Motion to Strike be DENIED AS MOOT. (Docket No. 55.)

[25] In addition, to the extent Amr moves the Court for relief under Rule 59(e) or Rule 60(b) (*see* Pl.'s Mem. Resp. Defs. Mot. Dismiss Am. Compl. 30) (Docket No. 26), the Court notes that this request falls within the body of Amr's response to Defendants Young and Mohamed's Motion to Dismiss, and as such, does not comport with this Court's Local Rules. *See* E.D. Va. Local Civ. R. 7(F). The Court RECOMMENDS that Amr's request for relief pursuant to Rules 59(e) and 60(b) be DENIED WITHOUT PREJUDICE.

## IV.  Conclusion

The undersigned Magistrate Judge RECOMMENDS that:

1.  The VSU Defendants' Motion to Dismiss (Docket No. 8) be GRANTED;

2.  Young and Mohamed's Motion to Dismiss (Docket No. 22) be GRANTED;

3.  AAUP's Motion to Dismiss (Docket No. 30) be GRANTED;

4.  Amr's Motion for Leave to Amend (Docket No. 33) be DENIED AS MOOT;

5.  AAUP's Motion to Strike (Docket No. 55) be DENIED AS MOOT;

6.  Amr's Motion for Requesting a Hearing (Docket No. 68) be DENIED AS MOOT;

7.  Amr's oral motion to amend his Amended Complaint be DENIED; and,

8.  To the extent Amr seeks relief pursuant to Rules 59(e) or 60(b), that request be DENIED WITHOUT PREJUDICE.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof.  Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings.  Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the Complaint.  *See* Fed. R. Civ. P. 72(b).  It may also preclude further review or appeal from such judgment.  *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to Plaintiff, to counsel of record, and to the Honorable Robert E. Payne.

/s/
M. Hannah Lauck
United States Magistrate Judge

Date: 6-21-10
Richmond, Virginia

29