FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

2010 AUG 19  P 4: 54

CLERK U.S. DISTRICT COURT

SALAME M. AMR,                                                    Plaintiff,

v.                          Civil Action No.: 3:09cv667

EDDIE N. MOORE, JR, et al.,                              Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION

The Plaintiff, Salame M. Amr, moves this Court for reconsideration of its Orders on August 9, 2010 pursuant to the Federal Rules of Civil Procedures, Rule 52 for amended findings, Rule 59, for a new trial and for amendment of the Court's judgment on August 9, 2010, and including the provisions of Rule 60(b) as amended. The Plaintiff respectfully requests this Court to reconsider its Orders. The Defendants had fraudulently made the record to reflect that the Plaintiff was entitled to no relief. Plaintiff prays that the Court would reconsider its Orders and assess the undue prejudice upon him.

### Va. Code 18.2-172 (Uttering Forged Instruments)

"Whoever utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in Va. Code 18.2-172 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony." Forgery involves the false making or altering of writing of the Plaintiff's draft paper that had been submitted for

possible publication in the 2005 ASEE Conference Proceeding. The writing had been falsely made then to the existing Plaintiff's writing of draft paper that had been falsely and materially altered. That alteration is a forgery which had been done by adding to, substituting in, and deleting from the original document (Plaintiff's draft paper). Forging and Uttering are both Class 5 felony offenses in the Commonwealth of Virginia.

Since October 15, 2008, the Honorable Judge Robert Payne has known about the fraud of the Plaintiff's attorney, Scott Crolwey, and the Defendants' counsel, Gregory Fleming who has presented documents, deemed to be fraudulent by the Defendants, to support their Summary Judgment Motion, for their benefit and to the detriment of the Plaintiff in the prior lawsuit before this Court, Case No. 3:09CV628. The defendants have never refuted the Plaintiff's assertion that the documents, which they are relying upon to injure him (to get him denied tenure), are fraudulent. Nor have the defendants presented official convicting evidence to refute Plaintiff's disputation that the documents that they have been relying upon are fraudulent.

Under Virginia law,"[u]ttering is a separate and distinct offense from forgery." *Dillard v. Commonwealth*, 32 Va. App. 515, 519, 529, S.E.2d 325, 327 (2000). Forgery "is defined as 'the false making or materially altering with the intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" *Fitzgerald v. Commonwealth*, 27 Va. 171, 173, 313 S.E.2d 394, 395 (1984) (quoting *Bullock v. Comonwealth*, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964)). By contrast, the crime of uttering does not require proof that the defendants produced or altered the Plaintiff's writing of

his draft paper. *See Dillard*, 32 Va. App. At 519, 529 S.E.2d at 327. The Supreme Court of Virginia has found uttering to be "an assertion by word or action that a writing known to be forged is good and valid." *Bateman v. Commonwealth*, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964). A forged instrument is uttered when it is offered to another as genuine, without regard to whether it is so accepted." 4 Charles E. Torcia, Wharton's Criminal Law § 496 (15th ed. 1996). For instance, the Defendant Crawford had offered the forged evidence to the Board of Visitors as genuine, without regard it is so accepted. Since October 15, 2008, the Plaintiffs have been seeking, through numerous motions, to strike the Defendants Pleadings due to fraud and "fraud on the court" for knowingly using fraudulent documents to support their position. The Plaintiff has filed Motions to Strike Defendants' Affirmative Defenses of res judicata and collateral estoppels, which goes to the heart of the fraudulent documents.

Attorney Scott Crowley (a member of the Virginia State Bar) has willfully engaged in conduct prejudicial to the direction of serving justice and thereby has subverted the truth finding process. Plaintiff's former counsel in association with the counsel of the Defendants had deliberately aimed to extend adverse action taken at VSU to introduce significant prejudice to him in the court of law. The reconstruction of Rule 60(b) has been made to obtain relief from final judgment is specified in the rules as it is proposed to amend them. One procedure for seeking relief is by motion in the court and in the action in which the judgment was rendered. The other procedure for seeking relief is by a new or independent action to obtain relief from a final judgment, which action has begun in this Court where the final judgment was rendered on August 9, 2010. The Plaintiff does

invoke various rules, Rule 59, for his motion for new trial and for amendment of the Court's judgment on August 9, 2010, and Rule 52 for amended findings by the Magistrate Judge Lauck and including the provisions of Rule 60(b) as amended. See Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L J 623, 659--682. It endeavored then to amend the rules to permit, either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts.

The Plaintiff seeks relief under Rule 59(b), a motion for new trial on the ground of newly discovered evidence (forged draft paper and deposition transcripts) is permitted within ten days after the entry of the Court's judgment on August 9, 2010. Moreover, the Court's Order failed to include the Court's Order on April 15, 2010 to vacate the Clerk's proper entry of legally binding Default against the Defendant ASEE on February 23, 2010. The Plaintiff does envy the Court's favoritism to this Defendant in granting it great relief without demanding while the Plaintiff had been denied a "fair opportunity" for getting justice served. The Plaintiff has satisfied the requirement of Rule 59(b) that under this rule a motion for new trial that was served not later than ten days after the entry of the Court's judgment on August 9, 2010, for error by the court and newly discovered evidence that had been totally excluded. The Plaintiff seeks relief by his motion under Rule 60(b) as amended on the ground of newly discovered evidence. The Plaintiff's motion under Rule 59, made within 10 days, does affect finality of the Court's decision and the running of the time for appeal.

The federal rules of civil procedures will deal with the practice in every sort of case in which relief from final judgments is asked, and prescribe the practice.

Although the precise relief obtained in a particular case by use of these ancillary remedies is shrouded in ancient lore and mystery. *See Wallace v. United States, CCA 2d, 1944, 142 F2d 240, cert den, 1944, 323 US 712, 89 L Ed 573, 65 S Ct 37; Fraser v. Doing*, App DC 1942, 130 F2d 617; *Jones v. Watts*, CCA 5th, 1944, 142 F2d 575; *Preveden v. Hahn*, SD NY 1941, 36 F Supp 952; *Cavallo v. Agwilines, Inc.* SD NY 1942, 6 Fed Rules Serv 60b.31, Case 2, 2 FRD 526; *McGinn v. United States*, D Mass, 1942, 6 Fed Rules Serv 60b.51, Case 3, 2 FRD 562; *City of Shattuck, Oklahoma ex rel. Versluis v. Oliver*, WD Okla 1945, 8 Fed Rules Serv 60b.31, Case 3; *Moore and Rogers, Federal Relief from Civil Judgments*, 1946, 55 Yale L J 623, 631--653; 3 Moore's Federal Practice, 1938, 3254 et seq.; Commentary, Effect of Rule 60b on Other Methods of Relief from Judgment, op cit supra. Cf. Norris v Camp, CCA 10th, 1944, 144 F2d 1; *Reed v. South Atlantic Steamship Co. of Delaware*, D Del 1942, 2 FRD 475, 6 Fed Rules Serv 60b.31, Case 1; and *Laughlin v. Berens*, D DC 1945, 8 Fed Rules Serv 60b.51, Case 1, 73 WLR 209.

Fraud, whether intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party are express grounds for relief by motion under amended subdivision (b). The Plaintiff seeks relief from the Court's judgment obtained by extrinsic fraud could be secured by his motion. Fraud had been made an express ground for relief by motion; and under the saving clause, fraud may be urged as a basis for relief by independent action insofar as established doctrine permits. *See Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L J 623, 653--659; 3 Moore's Federal Practice, 1938, 3267 et seq.* The federal rules of civil procedures expressly does not limit the power of the

court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, *see Hazel-Atlas Glass Co. v. Hartford Empire Co. 1944*, 322 US 238, 88 L Ed 1250, 64 S Ct 997. The Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief. It should also be noted that under § 200(4) of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 USC Appendix, §§ 501 et seq. [§ 520(4)], the Court's judgment rendered in the current and prior proceedings governed by the section may be vacated.

Plaintiff anticipated filing a "Motion to Request Subpoenas" sent out to ASEE, AAUP, and VSU in October 2008 when his former counsel fraudulently refused to do so during Discovery, neither in August 2008 nor in September 2008. Subpoenas were so critically needed then for requiring VSU to at least forward its "forged" evidence for the Court's official review in a sealed envelope. The Court could have had seen for itself that a "forged" evidence undeniably had been used to convict Plaintiff of such serious charge of plagiarism. This forged evidence should never be used to validate the two unlawful reports from SIC that were fraudulently presented by counsel of Defendants' to defraud this Court while manipulating it to issue decision into their favor. Defendant ASEE would have been required to openly inform this Court whether its late request for clarification about a voluntarily withdrawn paper could reasonably resemble a plain charge of plagiarism against Plaintiff (whether Plaintiff's presented work for possible publication was not any lawful). It is undisputed fact that the Plaintiff's draft paper had indeed been made part of the 2005 conference proceeding. But

for his fraud and fraud upon the court, the Plaintiff's former counsel, Scott Crowley, as an officer of the Court, could have simply issued those subpoena duces tecum without a motion before this court.

Defendant AAUP would have been required to explain how and at what stage it got involved in conspiracy with Defendants in circulating of the "forged" manuscript that aimed to establish unfounded charge of plagiarism in order to facilitate removing Plaintiff as well as the Provost W. Eric Thomas. In order to facilitate removing the Provost W. Eric Thomas, the American Association for University Professors ("AAUP") had recklessly attacked the VSU's reputation for condoning the Plaintiff's unfounded plagiarism. However, AAUP failed to seek protecting the damaged reputation of an exemplary University Professor (Plaintiff). In his urgent request to Donna Crawford for alerting the VSU's Board of Visitors about the alleged plagiarism, the then President of AAUP, Gerald Burton ("Burton) explicitly pointed out that "evidence proving this allegation is available through several sources throughout the campus." Plaintiff pray that the Court allows him to learn about those sources and whether they had the same forged evidence or different ones in the interest of serving justice.

The plaintiff was deprived of a "full and fair opportunity" to supplement the record in the prior proceeding early enough for the magistrate judge's review while issuing her first report and recommendation. The Plaintiff could have requested leave of court (established legal foundation to get his terminated employment reinstated) at the conference hearing on December 11, 2008. In September 2008, Plaintiff's former counsel fraudulently refused to clarify for his client the actual reason behind the Court's Order on September 9, 2008 to

continue the case generally which significantly implied that the legal case was going to get dismissed. He fraudulently continued in taking his unethical part in deceiving his own client. Plaintiff had been a victim of deception, plain dishonesty, and fraud. But for his counsel's fraud, deception and betrayal, Plaintiff would have had prevailed and succeeded in getting immediate relief, at least getting his terminated employment reinstated. Plaintiff asserts under penalty of perjury that Defendants are well aware that they had no valid (forged) evidence to substantiate convicting him of such a serious charge of plagiarism in order to succeed in getting rid of him.

The former counsel's fraud had been instrumental to get the presented three counts in the Amended Second Complaint dismissed with prejudice which aimed to assist the counsel of the Defendants in fraudulently creating res judicata and collateral estoppels bars for any future litigation. First, count one was dismissed under the doctrine of statute of limitation because the former counsel fraudulently did not sue defendants Brown and Williamson who were in conspiracy with defendant Rashidi and Moadab to get rid of the Plaintiff in discrimination against the Plaintiff's national origin, race, and religion. Although the unfounded charge of plagiarism originated in 2005 by Moadab and defendant Rashidi, it had never ended then. It had continued to revolve stronger with the circulation of the manufactured forged alleged plagiarized paper where defendants Williamson and Brown had forward it as a true evidence to the Scientific Integrity Committee ("SIC") to justify getting the Plaintiff denied tenure (Ultimate goal of Moadab and Rashidi).

Moreover, the former counsel Crowley had fraudulently removed the

"annual evaluation" cause of action from the Amended Second Complaint that had been included in the original and first amended complaints. The magistrate judge Lauck noted in her report and recommendation that count two cannot proceed as a matter of law meaning that defendant Rashidi was wrongly sued under 1981 rather than 1983. Ironically, it was pointed as well by the defendants in their "Motion for Summary Judgment" where the former lawyer did not contest that in order to get the count two dismissed. Count three was supposed to address the evident violation of the plaintiff's "Due Process" right by only Defendants Brown and Williamson rather than many other Defendants, i.e., members of SIC. Count three had fraudulently been fabricated to get dismissed by failing to encounter the Defendants' evident fraud, forgery, conspiracy, defamation, and discrimination. The Plaintiff was denied "Equal Protection" right as well as "due process" of law under the Fourteenth Amendment of the United States Constitution. In the interest of serving justice, the Plaintiff prays that the District Court will grant this motion for a "fair opportunity" to hold Defendants' liable for their wrong doings.

In response to his client distress for closing discovery so quick before calling several key witnesses and Defendant Moore, Plaintiff's former counsel fraudulently comforted Plaintiff that they would be called at trial which he knew well it would be highly unlikely to happen. Former counsel refused to assist Plaintiff in requesting the same demands from Defendants that had been drafted in the September 18, 2007's letter by the past Counsel, Carolyn Carpenter. The former lawyer representing Plaintiff perverted his discretional authority, and misapplied his power to cause devastating harm to his client's legal position.

Since by sabotaging and undermining plaintiff's legal position during the proceedings, the former lawyer willfully acted to deny him of his right to proceed and receive a fair and impartial trial. Thereby, the causational result of such professional misconduct is that with certain probability the matter of legal right of ownership of the property would have been expediently decided in plaintiffs favor; if not but for the extreme and outrageous professional misconduct of the lawyers on both sides. *See People v. Zajic*, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980). Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the Court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It is where the court or a member is corrupted or influenced or influence is attempted . . . thus where the impartial functions of the court have been directly corrupted." Plaintiff paid a fee for the Court's reporter while taking deposition of three Defendats Brown, Rashidi, and Williamson as well as three witnesses (Provost W. Eric Thomas, Deborah Goodwyn, and Shaukat Siddiqi. The former counsel fraudulently failed to neither order the deposition transcripts nor informed his client of this catastrophic drastic effect to his case. Even after Plaintiff took over the case, former counsel fraudulently aimed to keep Plaintiff from finding out or order them until after the case got dismissed with prejudice.  Plaintiff had ordered those transcripts in February 2009 which got filed in the prior proceeding to supplement the record before the Unite States Court of Appeals for the Fourth Circuit.

"Fraud upon the court" has been defined by the Seventh Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *See Kenner v. C.I.R.*, 387 F.3d 689 (1968). The Seventh Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." Moreover, "fraud on court" is committed when attorney concoct some unconscionable scheme calculated to impair the Court's ability fairly and impartially to adjudicate dispute. "Fraud on the court" occurred when acts of the Plaintiff's counsel and the counsel of the defendants prevented the Plaintiff from fully and fairly presenting his case before the Court. Defendants' fraudulent scheme of presenting invalid (forged) evidences before the Court to support their unfounded false charge against the Plaintiff and subsequently covering-up their scheme constituted "fraud on the court" warranting sanctions. *See Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 40ff affirmed 118 F.3d 1575 (Pa. 1996). Whereby, the Plaintiff's attorney, as an officer of the court, perpetrated a continuous and pervasive pattern of interfering with the Plaintiff's ability to obtain his right to justice in the Court. Since, they circumvented him from receiving due process provided under the Laws and the United States Constitution.

The unethical conduct is indicated by the record is focused to maliciously interfere with plaintiff's opportunity to establish his legal rights for justice and obtain equitable relief while having his day in Court. "Fraud on the court" doctrine permits court to overturn settled decrees and final orders, and as a result

is narrowly construed and is defined to most egregious cases, such as improper influence exerted on court by corrupted attorney, in which integrity of the court and its ability to function impartially is directly impaired. Fraud on the court' justifying reconsideration occurs in demonstrating, clearly and convincingly, that counsels of defendants have sentinently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate matter by improperly influencing tier or unfairly hampering presentation of the Plaintiff's claims. Federal Rules of Civil Procedures, Rule 60(b)(3), 28 U.S.C.A.--*Hall v. Doering*, 185 F.R.D. 639 (Kan. 1999). The Plaintiff's former lawyer egregiously devastated his client's legal position. Thereby, depriving Plaintiff of pursuing his available opportunities where he absolutely could have prevailed, which he substituted with consummating the legal agenda of the opposition. Since, the Plaintiff's lawyer is officer of the court, the fraudulent misrepresentations he made on the central matter in the presented legal dispute, constitutes a perpetration of a "Fraud Upon this Court." Plaintiff's former lawyer performed in a manner to ensure his client's expressed interests were not achieved, as is described of the unethical conduct by the Plaintiff's first lawyer, Carolyn Carpenter who could have let the lawsuit involuntarily dismissed in order to create res judicata bar for any future action. Counsel Carpenter did require Plaintiff to pay $10,000 a month for her representation. *See Exhibit A.* She did not want to protect her client's legal right to be compensated by enforcing the letter of demands on September 18, 2007. Thus, by Carpenter wanting to have a new letter of engagement signed on February 2008 while threatening she could withdraw herself at any stage of the legal proceeding at any moment the

Plaintiff failed to continue paying $10,000 per month. She could have ethically helped her client while getting paid from executing the prevailing lawsuit. Since, past counsel Carpenter did not provide Plaintiff with the legal right to postpone compensating her for professional services rendered if she performed brilliantly and expediently achieved everything the Plaintiff wanted.

Specifically, both lawyers related to the Plaintiff in the same manner to control and deceive him. This even manifested where both of Plaintiffs lawyers, Carpenter and Crowley, executed the exact same tactics to manipulate and coerce Plaintiff to walk away from clearing his "good" name dropping the lawsuit without getting any relief. Counsel Carpenter represented Plaintiff during the first stage of the legal proceeding. This is when she tricked Plaintiff into signing the new binding legal contract that aimed to get him financially broken so quickly, by refusing to serve the filed lawsuit.

Plaintiff's second lawyer, Scott Crowley, was retained right after the first lawyer Carpenter had agreed to serve the lawsuit and just before the defendant had filed their pleading response and "Motion to Dismiss." On February 25, 2008 and right after the lawsuit was served, Carpenter amended the original civil complaint without adding more counts that pertains to the Plaintiff's tenure denial based upon the unfounded charge of plagiarism. Counsel Crowley fraudulently refused to amend the complaint before getting the "Right to Sue notice" from EEOC on July 1, 2008. He fraudulently aimed to waste the Plaintiff's opportunity to get the charge evaluated for merits there or at least to validate Defendants' evidences. Yet, this was done without first consulting with Plaintiff if it was his desires. Thus, counsel Crowley neglected to pursue amending the

complaint so effectively under the Title VII of the civil rights. However, if counsel Crowley got the total Plaintiff's violated rights presented before the Court, he would have facilitated an opportunity to have Virginia State University offered him promotion and tenure as previously agreed upon on September 13, 2007 in attendance of counsel Carpenter.

Service had been properly perfected for Defendant ASEE on January 20, 2010 by one day before perfecting service to Defendant AAUP who had responded after 19 days after the date of service. The Court consider that the claimant weather a "good cause" to vacate Default judgment which deprived plaintiff from any relief under the law. The Plaintiff prays that his disability to overcome counsels' fraud due to significant health issues in 2008 could resemble a "good cause" for reversing the Court's Order to grant him relief. In contrast, the Defendant ASEE could have contacted and found counsel by telephone or internet rather than physically walked down the street. Defendant ASEE's major effect of prejudice inflicted upon the Plaintiff in May 2008 when he was removed from his job that constitutes the start of statute of limitation of adverse effect for personal damages. Plaintiff had significant health issues during the prior proceeding which prevented him from realizing that he was represented by a dishonest lawyer which could rise to a "good cause" to grant him relief of vacating the final judgment on January 14, 2009 as well as the judgment on August 9, 2010. Plaintiff was hardly able to walk where he used crutches to move around in June 2008, stayed in hospital for six days in July 2008. The Plaintiff had been under pain medications and going through extensive physical therapy until December 2008.

The Plaintiff had been wrongly convicted of plagiarism. Yet, he is innocent. On January 25, 2005, the American Society of Engineering Education ("ASEE") had requested an explanation from the Plaintiff about the reasonably legitimate commonalities between his previously withdrawn draft paper and the TAMUK's paper. It is undisputed fact that ASEE had acknowledged then that the Plaintiff had explicitly referred to the "virtual laboratory that was used at TAMUK" for educating students on page 8 of his "authentic" draft paper which evidently indicated the existence of the lawful "piggybacking" process. It is undisputed fact that this critical piece of evidence (page 8) is missing from VSU's "forged" alleged plagiarized paper where the Scientific Integrity Committee ("SIC") had relied heavily upon it to convict the Plaintiff of plagiarism in order to facilitate getting him denied tenure (getting his employment terminated). *See Exhibit B.* It is undisputed fact that SIC failed to admit to the Plaintiff neither in February 2007 nor in May 2007 that "forged" evidence had been indeed used to reach erroneous conclusions even after it had been explicitly pointed out to them by the Plaintiff.

The request for explanation had become moot when it reached the Plaintiff in January 2005 after the draft paper had been voluntarily withdrawn. The Plaintiff was not required to address the legally accepted commonalities when the draft paper had been absolutely removed from the 2005 ASEE Conference Proceeding. In conspiracy, the defendants continued to fraudulently claim that the Plaintiff had four years to respond to ASEE's request for explanation. First, Plaintiff had contacted ASEE in 2005 where he was informed that an explanation was not needed when no record of his draft paper existed. Second, between 2005 and 2007, the unfounded charge had been absolutely dropped out by the Provost

Thomas to even wanting him to explain none. Third, the Defendant ASEE's false claim that Plaintiff's draft paper "had been rejected' while informing the VSU's administration (not the Plaintiff) in 2005. Fourth, the unfounded charge had surfaced again in January 2007 when SIC had issued its first reckless report. Fifth, Defendant ASEE had fraudulently admitted in January 2007 that the Plaintiff's draft paper voluntarily "had been withdrawn" but after he was informed about the commonalities. The Plaintiff's former lawyer failed to request subpoena duces tecum from ASEE to rebut its false contention. The Plaintiff asserts under penalty of perjury that the draft paper had been indeed voluntarily withdrawn before he was contacted on January 25, 2005 for requesting explanation. The detailed explanation of the commonalities was submitted in February 2007 to SIC which had been totally ignored in May 2007. The Plaintiff's former counsel had that explanation that he fraudulently failed to attach to the Plaintiff's sworn affidavit. The Plaintiff had attached it to his "Motion to Continue my case" that got denied as moot on January 14, 2009. The magistrate Judge Lauck did not take into consideration that the charge had not been founded to even need an investigation. Defendants Brown and Williamson deliberately passed forged evidence to several others as true knowing it to be forged. Their criminal action had been significantly aimed to cover up for their unlawful action by counsels' fraud and fraud upon the court.

In that request for explanation, Defendant ASEE had explicitly indicated that "In fact, while there are numerous examples in LabView.NI Elvis, both papers chose to look at the same example." *See Exhibit B*. The Plaintiff <u>CHOSE</u> (liberty and freedom of choice) to display the use of the same "commonly-used"

simple example to introduce LABVIEW/NI ELVIS software of computer virtual tools for enhancing education to students. It is undisputed fact that neither the Plaintiff nor the other authors own the execution of the selected built-in simple example made available to educators around the world from the public domain of the National Instruments Incorporated (Vendor of LABVIEW/NI ElVIS). The Defendant ASEE had prior knowledge that the Plaintiff's draft paper had been voluntarily withdrawn before January 25, 2005, i.e., the draft paper had been previously removed by the Plaintiff from the 2005 conference proceedings. In conspiracy, Defendant ASEE got fraudulently supportive to defendants in achieving their ultimate goal of getting rid of the Plaintiff.

In filing a lawsuit, the Plaintiff aims to clear his "good" name from being wrongly convicted with such a serious charge of plagiarism and to reinstate his unlawful termination of employment (tenure denial) at VSU. The Plaintiff anticipates getting a "fair opportunity" to bring forward ample evidence that the charge had been undeniably false (unfounded). The plaintiff had established that the defendants intentionally and unjustifiably induced VSU to deny him tenure (get rid of him) by providing false and misleading information. *See Illinois Bell Telephone Co. v. Plote*, Inc., 334 Ill.App.3d 796, 806 (1st Dist. 2002).

The intentional and unjustified inducement of the breach of the Plaintiff's expected continued employment contract had taken place through active persuasion, encouragement, or inciting that had gone beyond merely providing information in a passive way. The defendants had recklessly facilitated removing the Plaintiff as well as the Provost Thomas. The members of SIC must be held accountable for reaching reckless conclusions in convicting the Plaintiff even

17

after it had been explicitly informed about the unfounded charge and the forged evidence used. The Plaintiff prays that the court will hold these allegations constituted extrinsic fraud, and are sufficient to sustain a claim of extrinsic fraud and to vacate the final judgment of the prior proceeding. Hence, "[i]n order to secure equitable relief on the basis of fraud, the fraud must be extrinsic." Fraud upon the court by an attorney, whether or not intrinsic or extrinsic, can be used to set aside a prior judgment. *See Chewning v. Ford Motor Co.,* 345 S.C. 28, 550 S.E.2d 584 (Ct. App. 2001).

The former counsel fraudulently failed then to explain to the Court why he misrepresented his client in refusing to assist his client getting any relief, at least reinstating his terminated employment. Federal Rule 60(b)(3), by its express terms, permits judgments to be set aside for fraud, whether the fraud is intrinsic or extrinsic." *See Mr. G. v. Mrs. G,* 320 S.C. 305, 465 S.E.2d 101 (Ct. App. 1995). All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, statutes, and by other rules promulgated by the Supreme Court. Another argument to justify the admission is the "time honored equitable maxim that all courts have the inherent power to all things reasonable necessary to ensure that just results are reached to the fullest extent possible." *See Buckley v. Shealy,* 370 S.C. 317, 323, 635 S.E.2d 76, 79 (2006). The Plaintiff respectfully asks the Court to consider admitting as evidence the two exhibits (VSU's alleged forged plagiarized draft paper and the deposition transcripts).

Recently the Supreme Court relied upon the equitable principle of unclean hands. *Id.* The doctrine of unclean hands will preclude a litigant from recovering in equity if that litigant acted unfairly to the detriment of the other party. *See*

*First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 5t4, 568-69, 511 S.E.2d 372 (Ct. App. 1998). The Defendants had forged evidence to sustain the unfounded charge in order to facilitate getting rid of the Plaintiff. Black's Law Dictionary says it is the type of fraud which is collateral to the issues tried in the case. The Plaintiff prays that the Court declares that it is fraud that actually prevented the legal case from proceeding to trial. Plaintiff had been kept ignorant fro the lawsuit. Plaintiff asserts that his former counsel prevented him from trying the case by keeping him away from the Court with a false promise of compromise to get him great relief after getting the "Right to Sue Notice" from EEOC. "Fraud upon the court" is extended to officers of the court, and when a corrupted attorney exerts improper influence on the court "the integrity of the court and its ability to function impartially is directed impinged." *R.C. by Ala. Disabilities Advocacy Program*, 969 F. Supp. At 691 (citing *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080,1085-86 (Fed. Cir. 1993)).

Rule 60(b)(6) has very broad language: "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60. A sub-species of 60(b)(6), fraud upon court , is assumed in the broad language of 60(b)(6). The Rules are designed to give the court flexibility to manage cases equitably by ensuring that a court's holding is accurately reflected in its decision and is based on all of the facts. Rule 38 effectuates a party's Seventh Amendment right to a jury trial. The issue of fraud does concern the parties because it may influence the disposition of the case. If the judgment is the result of error or fraud, then finality impedes the pursuit of justice. Rule 60(b) cures fraud, and error that implicate the court's institutional integrity.

The Court has "equitable authority" to give relief to judgments when appropriate and reinforces the proscription of fraudulent behavior.   The former counsel Crowley did commit perjury in tampering with the sworn Plaintiff's Affidavit and signed unsworn declaration instead of the original one signed by the Plaintiff before public notary. Since this was made in a judicial proceeding regarding a material matter, it was perjury. The Court's judgments should be vacated since they were heavily based upon falsification of documents, fraud and fraud on the court.

The Plaintiff anticipates filing an Amended Complaint, under oath, with specific allegations and causes of action in the interest of serving justice in response to the second "Right to Sue" notice from the Equal Employment Opportunity Commission (EEOC) which requires bringing a lawsuit within 90 days. The Plaintiff's oral motion for leave court to amend his civil complaint was denied on August 9, 2010. The Plaintiff prays that this Court will grant this motion while vacating the Court's judgment in granting him relief that may conserve the judicial process in amending the current lawsuit rather than filing a new civil action per the EEOC's notice. The Plaintiff's prays that the Court will grant his motion for reconsideration and relief in interest of serving justice. Plaintiff prays that the Court will reverse its Order to grant the Defendants' "Motion to Dismiss." Plaintiff prays that the Court will reverse its Order to deny his "Motion to Request Subpoenas."

Respectfully submitted,

Salame M. Amr

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2010, I will file the foregoing with the Clerk of Court and mail a copy to the following:

Gregory C. Fleming, Esq.,
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

John A. Gibney, Jr.
Thompson McMullan, P.C.
Attorney at Law, Counsel for ASEE
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219

Jeremy D. Capps
Harman, Claytor, Corrigan, and Wellman
Attorney at Law, Counsel for AAUP
Post Office Box 70280
Richmond, Virginia 23255

_____
Salame M. Amr